UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALEX LATTIMORE, <br><br> Plaintiff, <br><br> v. <br><br> KOSCIUSKO COUNTY SHERIFF, <br> QUALITY CORRECTIONAL CARE, LLC, <br> CANDIE HUPP, JERRAD JONES, <br> KEATON SCHOPF, and GORDON NASH, <br><br> Defendants. | CAUSE NO.: 3:22-CV-900-TLS-JEM |

**OPINION AND ORDER**

This case arises out of a jaw injury that the Plaintiff sustained at the Kosciusko County Jail (the Jail)—where the Plaintiff was temporarily housed for a hearing—on July 15, 2021, when another inmate punched him in the face. After the incident, the Plaintiff was taken to see the Jail nurse, Defendant Candie Hupp (an employee of Defendant Quality Correctional Care, LLC), about a minute after he requested medical attention. Defendant Hupp evaluated the Plaintiff, and she determined that he needed an x-ray. However, the Jail did not have an x-ray machine. While the Plaintiff saw the nurse, Defendant Jerrad Jones dealt with the inmate that punched the Plaintiff.

After the Plaintiff saw the nurse, Defendant Keaton Schopf decided that for the x-rays the Plaintiff should be returned to the Indiana Department of Corrections, Westville Correctional Facility (Westville), which was the Plaintiff's residence and involved a drive that takes about one hour and fifteen minutes. Defendant Gordon Nash transported the Plaintiff to Westville. The Plaintiff experienced pain from the movements of the vehicle on the ride to Westville. Although the Plaintiff asked Defendant Nash to take him to the hospital, his request was denied. Defendant

Nash informed the Westville guards of the Plaintiff's jaw injury and need for medical attention on arrival.

At Westville, a nurse evaluated the Plaintiff and ordered x-rays about 2.5 hours after Defendant Hupp had evaluated the Plaintiff. The Plaintiff then waited for the x-rays for an unspecified amount of time. He was later (at an unspecified date and time) taken to a hospital where he testified that his jaw was wired, which lasted four to six weeks.

The Plaintiff filed an Amended Complaint [ECF No. 19] alleging, as is relevant here, that he should have been taken directly from the Jail to a nearby hospital, not to Westville, and that the delay in going to Westville caused him more pain. The federal law claims are: (1) against Defendants Hupp, Jones, Schopf, and Nash for deliberate indifference based on a delay in medical care under the Eighth Amendment; (2) against Defendants Hupp, Jones, Schopf, and Nash for a failure to intervene under the Eighth Amendment; and (3) against Defendant Kosciusko County Sheriff for a delay in medical care caused by unconstitutional and/or constitutionally deficient policies, practices, procedures, and/or customs in effect at the jail. The Indiana state law claims are: (1) against Defendant Kosciusko County Sheriff for a failure to provide the Plaintiff with adequate medical care; (2) against Defendants Hupp, Jones, Schopf, and Nash for the careless and negligent denial of the Plaintiff's right to receive reasonable medical services; and (3) against Defendants Kosciusko County Sheriff and Quality Correctional Care, LLC for careless and negligent denial of reasonable medical care under a theory of respondeat superior.

This matter is before the Court on Defendants Kosciusko County Sherriff, Jones, Schopf, and Nash's Motion for Summary Judgment [ECF No. 44], filed on August 30, 2024, which is fully briefed and ripe for ruling. For the reasons set forth below, the Court grants in part the

motion and denies in part the motion. The Court sua sponte grants summary judgment in favor of Defendant Hupp on the delay in medical care claim under the Eighth Amendment. The Court also sua sponte grants summary judgment in favor of Defendants Hupp, Jones, Schopf, and Nash on the failure to intervene claim under the Eighth Amendment. The Court declines to exercise supplemental jurisdiction over the remaining Indiana state law claims.

## BACKGROUND AND MATERIAL FACTS

On July 14, 2021, the Plaintiff—Alex Lattimore—resided in the Indiana Department of Corrections, Westville Correctional Facility (Westville) serving a sentence under Cause No. 02D05-1810-F5-000305. Am. Compl. ¶ 7, ECF No. 19; Def. Ex. A, p. 9, ECF No. 45-2. On July 14, 2021, the Plaintiff had charges in another case pending against him in Kosciusko County under Cause No. 43C01-2010-F4-000725. Am. Compl. ¶ 7; Def. Ex. A, pp. 9–10. The initial hearing for that other case was scheduled for July 15, 2021. Def. Ex. A, p. 10. On June 30, 2021, the Kosciusko County, Indiana, Circuit Court entered a Transport Order, ordering Westville to release the Plaintiff to the custody of the Kosciusko County Sheriff to be transported to Kosciusko County for an initial hearing on July 15. Def. Ex. E, ECF No. 45-10. The court further ordered the Kosciusko County Sheriff to return the Plaintiff to Westville's custody at the conclusion of the hearing. *Id*. On July 14, 2021, the Plaintiff was transferred from the Westville to the Kosciusko County Jail (the Jail). Am. Compl. ¶ 7; Def. Ex. A, p. 10.

At the Jail, the Plaintiff was housed in J Block while he was temporarily there on July 14 and 15, 2021. Def. Ex. A, p. 11–12; Def. Ex. B, ¶ 3, ECF No. 45-7. In the morning on July 15, 2021, the Plaintiff attended the initial hearing on his pending Kosciusko County criminal case. Def. Ex. A, p. 11–12. He attended the hearing remotely from the Jail. Def. *Id.*, p. 11.

3

At 12:09 p.m. on July 15, 2021, once he returned to J Block, the Plaintiff was punched in the face by another inmate. Am. Compl. ¶ 8; Ex. A at 12; Ex. A-2, timestamp 12:09:49.[1] As a result, the Plaintiff suffered a jaw injury. Def. Ex. A, p. 17; Pl. Ex. 1 ¶ 4, ECF No. 65-1. A female officer took the Plaintiff out of the cell block at 12:24 p.m., about one minute after the Plaintiff asked for medical attention. Def. Ex. A, p. 25; Def. Ex. A-2, timestamp 12:24:36. The female officer took the Plaintiff directly to medical where a nurse, Defendant Candie Hupp, evaluated him, took his blood pressure and pulse, and asked permission from the doctor (Dr. Mikhail Galperin) to order mobile x-rays. Def. Ex. A, pp. 26–27; Def. Ex. A-9, ECF No. 45-6; Def. Ex. A-4, timestamp 12:26:16–12:29:43. The Jail does not have an x-ray machine. Def. Ex. D ¶ 5, ECF No. 45-9. The doctor okayed the mobile x-ray order. Def. Ex. A-9. The Plaintiff asserts that at this time "it was obvious that [he] needed to be taken to the hospital." Pl. Ex. 1 ¶ 5.

At 12:25 p.m., Defendant Jerrad Jones (a sergeant) went to the sergeants/corporals office and pulled a video of the event. Def. Ex. B ¶¶ 2, 5. He was informed that Defendant Hupp was seeing the Plaintiff. *Id.* ¶ 4. After viewing the video, Defendant Jones dealt with the inmate that struck the Plaintiff. *Id.* ¶ 6.

At 12:29 p.m., the Plaintiff stood up and walked out of Nurse Hupp's office escorted by a correctional officer (unidentified). Def. Ex. A, p. 33; Def. Ex. A-4, timestamp 12:29:54 p.m. Then the correctional officer (unidentified) put the Plaintiff in a holding cell. Def. Ex. A, p. 36. The Plaintiff testified that he told that correctional officer that he needed medical attention. *Id.* at 37.

---

[1] Defense Exhibits A-2, A-4, A-5, and A-7 are manually filed exhibits that are videos on discs. *See* ECF Nos. 47, 48. These videos are played using self-contained video players. *See* Def. SOMF fn. 1, ECF No. 45. In order to show the correct timestamps, select the Options menu, then Show Timestamps, then Server. *See id.* If this is not done, the timestamps shown on the video will be one hour behind the correct time. *See id.*

4

The Plaintiff was released to Westville before Defendant Hupp ordered the mobile x-rays. Def. Ex. A-9. At 1:01 p.m., the Plaintiff exited the holding cell, and he was told that he had to sign a paper and that he was going back to Westville. Def. Ex. A, pp. 43–44; Def. Ex. A-5, timestamp 1:01:58 p.m. The Plaintiff signed the paperwork. Def. Ex. A, p. 44. He asked a correctional officer (unidentified), "Can you please take me to a hospital?" *Id.* And the Plaintiff testified that the officer responded, "No." *Id.*

Defendant Keaton Schopf, a corrections officer at the Jail, completed the paperwork for the Plaintiff to be released back to Westville's custody. Def. Ex. C ¶¶ 2, 4, ECF No. 45-8. "[He] knew that [the Plaintiff] had seen the jail nurse, so [he] believed that [the Plaintiff] was medically ok to be transferred back to Westville." *Id.* ¶ 4. Defendant Schopf also knew "it would be several hours for the x-ray service to respond to the Jail. At times, the x-ray service would not respond to the Jail until the next day." *Id.* ¶ 6.

Defendant Gordon Nash was the transport officer at the Jail assigned to take the Plaintiff back to Westville on July 15, 2021. Def. Ex. D ¶ 3. At 1:08 p.m., Defendant Nash pulled out of the sally port of the Jail, and he transported the Plaintiff to Westville. Def. Ex. A-7, timestamp 1:08:52 p.m.; Def. Ex. D ¶¶ 3, 11. He knows from experience that the trip takes about an hour and fifteen minutes, and it could take as long as three hours for the x-ray service to respond to the Jail to x-ray an inmate. Def. Ex. D ¶¶ 6, 7. Therefore, he believed that the Plaintiff would get medical attention sooner at Westville than at the Jail. *Id.* ¶ 9.

On the way to Westville, the Plaintiff asked Defendant Nash "to stop at the hospital and take [him] to the hospital." Def. Ex. A, p. 50. The Plaintiff testified that on the ride "it hurt really badly . . . the movements of the car" and he begged Defendant Nash to take him to the hospital.

*Id*. The Plaintiff testified that Defendant Nash said that "he couldn't stop at the ER, and that he was sorry about that." *Id.* at 51.

When Defendant Nash and the Plaintiff arrived at Westville, Defendant Nash "told the guards that [the Plaintiff] needed to see medical right away." Def. Ex. D ¶ 11. He also told them "that [the Plaintiff] might have a broken jaw." Def. Ex. A, p. 52. Defendant Nash released the Plaintiff into the custody of the Westville guards. Def. Ex. D ¶ 11. "[T]hey brought [the Plaintiff] in, took [him] to the medical part." Def. Ex. A, p. 52.

At 2:53 p.m., a nurse at Westville evaluated the Plaintiff and ordered jaw x-rays. Def. Ex. A, p. 55; Def. Ex. A-8, p. 1–2, ECF No. 45-5. However, he "could not be x-rayed at Westville immediately because of such short notice and had to wait for a suitable 'dental apparatus' or 'dental thing,' which caused additional delays." Pl. Ex. 1 ¶ 10. The Plaintiff was then sent to the hospital for continuity of care (with no date, time, or treatment noted). Def. Ex. A-8, p. 2, ECF No. 45-5; Pl. Ex. 1 ¶ 11. The Plaintiff testified that at the hospital his jaw was wired—which lasted four to six weeks, he received mouthwash and wax for the wires, and he was put on a liquid diet. Def. Ex. A, p. 60. The Plaintiff also testified that no doctor has ever told him that he suffered any medical complications because the Jail did not send him to the ER immediately. *Id.*, p. 61. However, he also asserts, "non-treatment caused me additional horrendous pain and suffering, which would not have happened had my request for immediate hospitalization been granted in Kosciusko County." Pl. Ex. 1 ¶ 11.

## LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an

absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## ANALYSIS

Defendants Kosciusko County Sheriff, Jones, Schopf, and Nash seek summary judgment on the Plaintiff's 42 U.S.C. § 1983 deliberate indifference claims against them based on a delay of medical care under the Eight Amendment. They also seek summary judgment on the Plaintiff's Indiana state law claims against Defendant Kosciusko County Sheriff.

**A.    Federal Claims—42 U.S.C. § 1983**

Section 1983 provides, in pertinent part, that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff

7

must show that the defendant deprived him of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

1. *Delay of Medical Care*

In the Amended Complaint, the Plaintiff brings a § 1983 deliberate indifference claim based on a delay of medical care under the Eight Amendment against Defendants Jones, Schopf, and Nash for taking him from the Jail to Westville instead of taking him directly to the closest hospital after he injured his jaw, causing him more pain.[2] To establish liability under the Eighth Amendment, a plaintiff must show: (1) he suffered an objectively serious medical condition; (2) the defendant in question knew of the condition and was deliberately indifferent to treating the plaintiff; and (3) this deliberate indifference injured the plaintiff. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)).

"Summary judgment on causation is . . . warranted where 'a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury.'" *Id.* at 615 (quoting *Gayton*, 593 F.3d at 624). This is because the plaintiff must produce "verifying medical evidence" that the delay in treatment had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240–41 (7th Cir. 1996) (citations omitted). Thus, an "action will not lie unless the plaintiff introduces

---

[2] Although the Plaintiff brings a claim for a delay in medical care under the Fourteenth and/or Eighth Amendments, in the summary judgment briefing, the parties presume that the Eighth Amendment provides the proper standard for evaluating the claim. In this case, the Plaintiff was temporarily at the Jail as a pretrial detainee for an initial hearing at the time of the injury. He was also a resident at Westville as a post-conviction prisoner (in another case). "In *Miranda v. County of Lake*, [the Seventh Circuit] held the standard for pretrial detainees challenging their medical care under the Fourteenth Amendment is lower than that for post-conviction prisoners proceeding under the Eighth Amendment." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 n.3 (7th Cir. 2022) (citing *Miranda v. County of Lake*, 900 F.3d 335, 350–54 (7th Cir. 2018)). In this case, the Plaintiff did not advocate for the application of the Fourteenth Amendment standard in his summary judgment response brief, "thereby waiving the question." *Id.* Thus, the Court assumes that the Eight Amendment standard applies.

verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (citations omitted); *see Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm.").

"Verifying medical evidence" includes

> expert testimony that the plaintiff suffered because of a delay in treatment . . . . On the other hand, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him.

*Williams*, 491 F.3d at 715 (cleaned up). For example, medical records indicating that the administration of medication "almost immediately relieved [the plaintiff's] pain" would allow "a jury could find that the defendants' delay caused [the plaintiff] six extra hours of pain . . . for no good reason." *Id.* at 716.

Here, the Plaintiff has not provided verifying medical evidence that the delay in going to Westville for medical treatment exacerbated his jaw injury. The Plaintiff's briefing on this issue provides:

> Plaintiff contends that the delay exacerbated his injury by causing more pain. In this case, Plaintiff could have and should have been treated for his seriously broken jaw simply by being transferred to a local hospital where he could have received appropriate medical care. Here, there was no valid reason (other than to save money by providing no medical care) by transferring him back to Westville and causing him to suffer needless pain for hours. All of the correctional officers that interacted with the Plaintiff saw his injury, heard his pleas for help, and knew that Plaintiff was in serious pain—which they all prolonged by refusing to get him immediate emergency medical care locally, and instead opting to transfer him back to Westville, causing Plaintiff to suffer additional hours of pain which was needless and demonstrative of deliberate indifference.

Pl. Br. 4, ECF No. 64 (cleaned up).

As highlighted by the Defendants, the Plaintiff merely asserts reasons why Defendants Jones, Schopf, and Nash demonstrated deliberate indifference. The Plaintiff also asserts that the jaw injury required "immediate emergency medical care." *Id*. at 7. However, he does not point to a medical record showing a medical diagnosis related to his jaw injury. Nor does he point to any expert testimony that the Plaintiff suffered because of the delay in treatment of his jaw injury or a medical record that indicates that the Plaintiff experienced pain from the jaw injury *and* that a particular treatment or medication relieved the Plaintiff's pain. *See Williams*, 491 F.3d at 715. Instead, the Plaintiff testified that no doctor has ever told him that he suffered any medical complications because the Jail did not send him to the ER immediately.

The Plaintiff additionally shows that he disagreed with being taken from the Jail to Westville and then to the hospital because he wanted to be taken directly from the Jail to a hospital near the Jail. However, although the Plaintiff testified that at the hospital his jaw was wired—which he had for four to six weeks, he received mouthwash and wax for the wires, and he was put on a liquid diet, he does not indicate that any of this provided pain relief. Nor does he provide his hospital medical record. Thus, at most the Plaintiff shows that he disagreed with not being taken directly from the Jail to the closest hospital. Evidence of "a mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (cleaned up).

Consequently, the Plaintiff has not shown that a jury could find that the Defendants' delay caused the Plaintiff pain for no good reason because he has not produced verifying medical evidence indicating such. Accordingly, no reasonable jury could find that the conduct of

Defendants Jones, Schopf, and Nash amounted to a constitutional violation. *See Langston*, 100 F.3d at 1240–41.[3]

2.  *Qualified Immunity*

Defendants Jones, Schopf, and Nash argue that they are entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). Thus, the two questions are "whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). Because the Plaintiff has failed to create a genuine dispute of material fact as to a constitutional violation, the Court need not further address the issue of qualified immunity. *See Los Angeles County v. Rettele*, 550 U.S. 609, 616 (2007); *Tucker v. Williams*, 682 F.3d 654, 660 (7th Cir. 2012) ("Because we do not find a constitutional violation, we need not and do not address Williams' qualified immunity defense.").

**B.    Abandoned Federal Claim**

The Defendants also move for summary judgment on the Plaintiff's § 1983 claim against Defendant Kosciusko County Sheriff for a delay in medical care caused by unconstitutional and/or constitutionally deficient policies, practices, procedures, and/or customs in effect at the jail. In his response, the Plaintiff does not address these arguments or defend this claim in any

---

[3] Thus, the Court need not address the Defendant's additional arguments.

way; thus, he has abandoned his federal claim against Defendant Kosciusko County Sheriff. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (concluding that a claim was abandoned when a party failed to defend it "in his district court brief in opposition to summary judgment"). Therefore, Defendant Kosciusko County Sheriff is entitled to judgment on the Plaintiff's § 1983 delay in medical care claim in the Plaintiff's Amended Complaint.

**C.    Federal Claim Against Defendant Hupp for Delay in Medical Care**

The one remaining federal claim is the delay of medical care claim under the Eighth Amendment against Defendant Candie Hupp based on not taking the Plaintiff directly to the closest hospital when he injured his jaw. "[W]here one defendant files a motion for summary judgment which the court grants, the district court may sua sponte enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion." *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (citation omitted). Here, the delay in medical care claim brought against Defendant Hupp is interrelated with the delay in medical care claims against Defendants Jones, Schopf, and Nash because proving a delay in medical care against each party requires verifying medical evidence that any delay in taking the Plaintiff to Westville and not taking him directly to the hospital exacerbated his jaw injury.

Accordingly, because the Court has granted summary judgment in favor of Defendants Jones, Schopf, and Nash on the delay in medical care claim under the Eighth Amendment (based on the absence of verifying medical evidence) and the Plaintiff submitted other evidence arguing in opposition to the motion for summary judgment by Defendants Kosciusko County Sheriff,

12

Jones, Schopf, and Nash, the Court sua sponte grants summary judgment on the Plaintiff's delay in medical care claim under the Eighth Amendment in favor of Defendant Hupp.

**D.     Federal Claim for Failure to Intervene Against Defendants Hupp, Jones, Schopf, and Nash**

The Court notes that, although neither party mentions it in their summary judgment briefing, in the Amended Complaint, the Plaintiff alleges a claim against Defendants Hupp, Jones, Schopf, and Nash for a failure to intervene as an alternative basis for an Eighth Amendment violation. Am Compl. ¶¶ 5, 21. To succeed on a failure to intervene claim, a plaintiff must show that the officer "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)); *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022) (same). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . ." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). This is "because an underlying constitutional violation is a primary concern when attempting to establish a failure to intervene claim." *Id*.

Here, even if the Plaintiff had pursued his failure to intervene claim in opposition to summary judgment, there was no underlying violation of his constitutional rights under the Eighth Amendment committed by Defendants Hupp, Jones, Schopf, or Nash, as discussed above, and the Plaintiff does not allege additional facts in support of the failure to intervene claim that could amount to a constitutional violation. *See Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("The problem for Fillmore, however, is the fact that there was no underlying violation of his constitutional rights committed by Henderson, Jack, or Higgins.").

"Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention." *Id*. Thus, there is no genuine dispute of

material fact that Defendants Hupp, Jones, Schopf, or Nash did not commit an Eighth Amendment violation for an alleged failure to intervene. "A district judge is authorized to grant summary judgment to a party that has not requested it; [she] is not required to conduct a trial when there is no genuine issue of material fact, just because the parties . . . [did not] notice the absence of any triable issues." *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994). Accordingly, the Court sua sponte grants summary judgment in favor of Defendants Hupp, Jones, Schopf, and Nash on the Amended Complaint's alternative § 1983 failure to intervene claim.

**E.     Indiana State Law Claims**

Defendants Kosciusko County Sheriff, Jones, Schopf, and Nash argue for summary judgment in their favor as to the Amended Complaint's Indiana state law claims against Defendant Kosciusko County Sheriff.

In this case, the Amended Complaint does not address the citizenship of the parties or the jurisdictional basis for any of the claims. In their summary judgment brief, the Defendants assert that the Court has supplemental jurisdiction (under 28 U.S.C. § 1367) over the Indiana state law claims. In his response, the Plaintiff does not dispute this statement of the Court's jurisdiction over the Indiana state law claims.

"When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). While the decision to exercise supplemental jurisdiction is discretionary, "there is a general presumption that the court will relinquish supplemental jurisdiction." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476,

479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (cleaned up). As the Court has not engaged in any meaningful review of the merits of the Indiana state law claims and has not otherwise committed substantial judicial resources to them, declining to exercise jurisdiction is proper. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case.").

Thus, the Court denies as moot Defendants Kosciusko County Sheriff, Jones, Schopf, and Nash's motion for summary judgment on the Indiana state law claim against Defendant Kosciusko County Sheriff because the Court is relinquishing supplemental jurisdiction over the Amended Complaint's Indiana state law claims.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part as moot the Defendants Kosciusko County Sheriff, Jones, Schopf, and Nash's Motion for Summary Judgement [ECF No. 44], granting the motion as to the Plaintiff's claims for delay in medical care under the Eighth Amendment against Defendants Kosciusko County Sheriff, Jerrad Jones, Keaton Schopf, and Gordon Nash. The Court DENIES as moot Defendants Kosciusko County Sheriff, Jones, Schopf, and Nash's motion for summary judgment on the Indiana state law claims against Defendant Kosciusko County Sheriff because the Court is relinquishing supplemental jurisdiction over the Amended Complaint's Indiana state law claims.

The Court sua sponte GRANTS summary judgment in favor of Defendants Candie Hupp, Jones, Schopf, and Nash as to the Plaintiff's alternative claim for a failure to intervene under the

Eighth Amendment. The Court also sua sponte GRANTS summary judgment in favor of Defendant Hupp as to the Plaintiff's claim for delay in medical care under the Eighth Amendment. This resolves all federal claims brought under § 1983 in the Amended Complaint in favor of Defendants Kosciusko County Sheriff, Candie Hupp, Jerrad Jones, Keaton Schopf, and Gordon Nash, and the Plaintiff Alex Lattimore takes nothing by way of the Amended Complaint on these federal claims.

The Court DIRECTS the Clerk of Court to enter judgment against the Plaintiff Alex Lattimore and in favor of Defendants Kosciusko County Sheriff, Candie Hupp, Jerrad Jones, Keaton Schopf, and Gordon Nash on the federal claims of the Amended Complaint.

The Court DECLINES to exercise supplemental jurisdictional over the Plaintiff's remaining Indiana state law claims and DISMISSES without prejudice those claims.

SO ORDERED on June 27, 2025.

        s/ Theresa L. Springmann
        JUDGE THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT